**RECEIVED**

AUG 20 2025

LEGAL PROGRAMS DEPARTMENT

SCANNED at LSP and Emailed

5/20 by KB . 11 pages

date    initials    No.

A COMPLAINT UNDER THE CIVIL RIGHTS ACT,
42 U.S.C. § 1983

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ZARIUS BROWN
Plaintiff

581363
Inmate Number

VERSUS

3:2025-cv-00624-SDD-RLB
Docket Number

Originally
E-filed on 7/16/2025

WILLIAM ROSSO, Assistant Warden,
AUSTIN CALVERT, Lieutenant Colonel,
TYRONE KELLY, Lieutenant Colonel,
(Enter above the full name of each
defendant in this action.)

Response to Deficiency Notice

Electronic Filing Pilot Program

In accordance with the Procedural Rules for Electronic Filing Pilot Project, General Order 2011, inmates who reside in or are transferred into Louisiana Department of Corrections facilities participating in the Electronic Pilot Program shall receive orders, notices and judgments by Notice of Electronic Filing ("NEF")

Instructions for Filing Complaint by Prisoners
Under the Civil Rights Act, 42 U.S.C. §1983.

The names of **all parties** must be listed in the caption and in part III of the complaint <u>exactly</u> <u>the same.</u>

In order for this complaint to be filed, it must be accompanied by the filing fee of $350.00. In addition, the United States Marshal will require you to pay the cost of serving the complaint on each of the defendants.

If you are unable to pre-pay the filing fee and service cost, you may petition the court to proceed in forma pauperis. You must sign the affidavit, and obtain the signature of an authorized officer certifying the amount of money in your inmate account. If pauper status is granted, you will be required to pay an initial partial filing fee and thereafter, prison officials shall be ordered to forward monthly payments from your inmate account until the entire filing fee is paid.

You will note that you are required to give facts. THIS COMPLAINT SHOULD NOT CONTAIN LEGAL ARGUMENTS OR CITATIONS. ALSO, <u>DO NOT INCLUDE EXHIBITS.</u>

Submit the complaint and pauper affidavit to the Clerk of the United States District Court for the Middle District of Louisiana, 777 Florida Street, Suite 139, Baton Rouge, La. 70801-1712.

I.    **Previous Lawsuits**

A.   Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?    Yes ( ) No (XX)

B.   If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1.  **Parties to this previous lawsuit**
    Plaintiff(s): _____

    _____

    Defendant(s): _____

    _____

2.  **Court** (if federal court, name the district; if state court, name the parish):

    _____

    _____

3.  **Docket number**: _____

4.  **Name of judge** to whom case was assigned: _____

    _____

5.  **Disposition** (for example: Was the case dismissed? Was it appealed? Is it still pending?):

    _____

    _____

6.  **Date of filing lawsuit**: _____
7.  Date of disposition: _____

C.  Have you had any previously filed federal lawsuits or appeals, whether or not related to the issues raised in this complaint, dismissed by any federal court as frivolous, malicious, or for failure to state a claim for which relief can be granted?
    Yes ( )    No (XX)

If your answer is yes, list the civil action numbers and the disposition of each case. You must identify in which federal district or appellate court the action was brought.

_____

II.   Place of present confinement: <u>Louisiana State Penitentiary, at 17544 Tunica Trace, Louisiana State Penitentiary, Angola, LA 70712</u>

A.  Is there a prisoner grievance procedure in this institution?
    Yes (XX) No ( )

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?
Yes (XX) No ( )

C. If your answer is YES:

1. Identify the administrative grievance procedure number (s) in which the claims raised in this complaint were addressed. ARP-LSP-2025-1156 [Accepted on 12/11/2024] (90 day grievance process expired on March 11, 2025 without issuance of 1st Step ARP Response)

2. What steps did you take? The grievance was ACCEPTED for response but no answer issued until after this lawsuit was filed on July 16, 2025.

3. What was the result? Denied at the First Step which issued on 7/21/25, sent in 2nd Step timely on 7/24/25. [See attached Exhibits]

D. If your answer is NO, explain why not: I am exercising my right to proceed to the next level of review pursuant to Louisiana Administrative Code, Title 22:325(J)(1)(c) since the 90 days for the entire process expired on 3/11/2025]

## III. Parties

(In Item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

A. **Name of plaintiff(s)** ZARIUS BROWN [DOC #581363]
Address Louisiana State Penitentiary, 17544 Tunica Trace, Angola, LA 70712

In Item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use Item C for the names, positions, and places of employment of any additional defendants.

B. **Defendant William Rosso** is employed as an **Assistant Warden** at the **Louisiana State Penitentiary,**

C. **Additional Defendants: Austin Calvert,** is employed as a **Lieutenant Colonel** at the Louisiana State Penitentiary

**Tyrone Kelly is employed as a Lieutenant Colonel** at the Louisiana State Penitentiary

All Defendants are sued in their individual capacity for damages and their official capacity for declarative and injunctive relief.

IV.    **Statement of Claim**

State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also  the names of other persons involved, dates, and places.  **Do not given any legal arguments or cite any cases  or statutes.**  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  (Use as much space as you need.  Attach extra sheets if necessary.)

1.  On October 20, 2024, the Louisiana State Penitentiary [hereafter "LSP"] Main Prison ["MP"] evening count cleared at approximately 5:46 pm., following the Angola Rodeo & Arts and Crafts Festival that day.

2.  The officer on Cypress Unit opened all the dormitory doors and announced the commencement of chow call at the Main Prison Kitchen. The MP Walk was extremely crowded and noisy from hundreds of men walking to the kitchen to eat a special meal served every Sunday after the Rodeo events.

3.  Plaintiff, ["Mr. Brown"] and other inmates were walking orderly on the right side of the walk as required to allow the middle section of the walk for exclusive use by officers for security purposes.

4.  However, because the Walk was so crowded and noisy, the middle section for security use was unusually narrow on this occasion. It was impossible to hear anything for the loud and boisterous talking among the inmates heading to the kitchen.

5.  When Mr. Brown arrived at Magnolia Unit, one unit up from Cypress where he was housed, Lieutenant Tyrone Kelly was racing dangerously down the crowded walk on a self-propelled bicycle and plowed into both Mr. Brown and another inmate named Kenneth Sparks/#92150 on a speeding bicycle without any regard for the safety of inmates on the crowded walk, purportedly in response to a security beeper activation on Spruce Unit.

6.  Security beepers are tested at or shortly after every shift change evert twelve hours at 5:30 am. nnd pm. False beepers activation are common. This

7.  The handle bars of Tyrone Kelly's bicycle hit Mr. Brown in his back on the right side. Mr. Kelly's right shoulder hit Mr. Sparks in his left shoulder.

8.  It was impossible to see Tyrone Kelly because he was sitting on a bicycle in a large crowd and moving so fast it was impossible to react before he ran right into us.

9.  Tyrone Kelly issued no orders and did not offer/summon medical access for either of us. Without any regard for either of our injuries, Tyrone Kelly sped away on the crowded walk in the direction of Cypress and Spruce Unit.

10. Numerous similar incidents have occurred in the past, especially around shift change during evening chow call involving officers using motorized vehicles or self-propelled bicycles injuring inmates while dangerously operating them on the crowded walk in response to beeper activations.

11. For this reason, various wardens have ordered the removal of motorized and self-propelled bicycles and forbade security officers from using them in response to security beeper activations because too many injuries were occurring among inmates and security.

12. It was reasonably a foreseeable risk to a prudent officer that riding a bicycle at high speed down a dangerously crowded and noisy walk during chow call would likely result in needless injury or harm, which is fact did occur on October 20, 2024 as has happened on many other occasions, during response to a security beeper activation.

13. It was an equally foreseeable risk that even at hollering loudly to "clear the walk" on a crowded and noisy walk that someone could not hear the order or see the officer on a speeding bicycle in time to react to avoid injury.

14. Mr. Brown was not offered access to medical until hours later between 9:30 pm. And 10:30 pm. When he was awoken from sleep and told to go see the nurse for the back pain and injury suffered from this incident.

15. By itself, this statement of claim is only a state tort claim for damages; however, this was only the beginning of the injury caused by named Defendants.

16. Mr. Brown immediately filed a request for administrative remedy procedure concerning the 10/20/24 incident with Tyrone Kelly that was subsequently accepted into the grievance system as ARP-LSP-2024-1757 on 11/6/2024.

17. In response to this Mr. Brown engaging in this protected activity, Defendant Kelly wrote a false disciplinary report for an allege violation of Rule 5 [Aggravated Disobedience] against Mr. Brown on 10/20/2024 around 8:00 pm, before the grievance/complaint was accepted into the grievance system for review.

18. Mr. Brown was found guilty on the premise that he failed to obey a direct verbal order he could not possibly have heard to clear the walk [See the security video requested preserved in the ARP complaint.] Mr. Brown is not challenging the disciplinary conviction herein. He is challenging the retaliation suffered for refusing to drop his ARP complaint.

19. On Sunday, November 5, 2024, I was subjected to a "targeted shakedown" and my JP6 Tablet device was confiscated because the KA Lite JPay app has not been kept working by JPay and misconstrued

by Msgt. Steven Franks that the device had been altered. My JP6 tablet was NOT altered or jailbroken and the KA Lite app does not work on anyone's tablet because DPS&C refuses to force Securus and JPay to maintain the kiosks or free apps, such as KA Lite.

20. Mr. Brown believes this "targeted shakedown" is part and parcel with the other incidents of retaliation instigated by Defendants Rosso, Kelly and Calvert, although he does not believe Msgt. Franks knew he was being used to retaliate on this occasion. Thus, who ordered this "targeted shakedown" is at issue and not the person who actually executed it.

21. Mr. Brown was written up for a Rule 31E [Unauthorized Use of an Authorized Item] which was eventually dismissed but his JP6 Tablet wrongfully confiscated was not returned

22. Immediately after the grievance against Defendant Kelly was accepted into the ARP system, Assistant Warden Rosso summoned Mr. Brown to the East Yard's Warden's Office on Friday, November 8, 2024 at approximately 1:30 pm, and loudly demanded I drop this "Bullshit ARP" on Lt. Col. Kelly and that I *will* **if I know what's good for me.**

23. I calmly informed Warden Rosso that I had no intention of dropping my complaint against Lt. Col. Kelly and requested permission to leave. William Rosso became enraged and ordered me to put my hands behind my back.

24. Defendant Rosso then ordered Defendant Calvert to write me up on a Rule 3 and a Rule 5 and told me I would remain in the maximum security for the remaining five years of my sentence unless I wanted to change my mind on dropping the ARP complaint against Lt. Col. Kelly.

25. Defendant Calvert immediately handcuffed me and escorted me to administrative segregation in compliance with Warden William Rosso's order for refusing to drop ARP-LSP-2024-1757. This occurred a little before 2:00 pm on Friday, November, 8, 2024.

26. I learned I was on the inmate disciplinary court sheet, for Wednesday, November 13, 2024 and obtained a copy of Defendant Calvert's falsified disciplinary report against me at the order of William Rosso; the DB Report was fabricated in its entirety.

27. The only truths in the falsified DB report written by Austin Calvert is that Mr. Brown was summoned to the Warden's Office concerning ARP-LSP-2024-1757 and that I refused to 'voluntarily' drop the complaint. Everything else was a complete fabrication in retaliation for refusing to drop my complaint against Tyrone Kelly.

28. After receiving a copy of the falsified disciplinary report and reading its fraudulent contents, I immediately filed an "emergency" grievance dated Thursday, November 14, 2024 against William

Rosso and Austin Calvert for retaliating against me for refusing to drop my grievance against his colleague Tyrone Kelly, *accepted as* ARP-LSP-2024-1847 *on* 12/11/24.

29. This disciplinary report was dismissed due to it being obviously falsely manufactured in retaliation for refusing to drop my ARP. The accusation of Calvert cursing him out and slamming his office door despite being off-duty at the time all at the direct instigation of Warden Rosso provide a basis for damages, declarative and injunctive relief against Defendants as a violation of my First Amendment right to seek redress for grievances through the established grievance procedure and to engage in and maintain such protected activities without suffering reprisals that are reasonably calculated to chill my desire to complete the complaint process.

30. Mr. Brown seeks to invoke jurisdiction of this Honorable Court pursuant to 28 U.S.C. §§ 1331(a), 1343, and 1367 [Supplemental Jurisdiction for state tort of negligence pursuant to LSA-Civ. Code Article 2315, et seq.]. Venue is proper pursuant to 28 U.S.C. §1391(b).

31. Mr. Brown clarifies in advance he is not seeking damages against any Defendant in his official capacity. Mr. Brown names all Defendants in their official capacities for purposes of state tort and federal declarative and injunctive relief *only*.

32. Mr. Brown names all Defendants is their individual capacities for damages for federal retaliation claims under the First Amendment and/or negligence claims under Louisiana statutory law.

33. I, Zarius Brown, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct.

V.  **Relief**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes. Attach no exhibits.

1. Declarative Relief stating that the actions described herein involving Defendants Tyrone Kelly, William Rosso and Austin Calvert constitute acts of retaliation in response to my good faith use of the grievance system and hence a violation of my First Amendment right to seek redress through the established grievance procedure.

2. Injunctive Relief forbidding any further similar attacks or retaliation and the immediate return of my JP6 Tablet wrongfully confiscated on Sunday, November 5, 2024.

3. Monetary Damages for retaliating against me for seeking redress for my injuries against Tyrone Kelly, William Rosso and Austin Calvert

**VI.    Plaintiff's Declaration**

1. I understand that I am prohibited from bringing a civil action in forma pauperis if, while I was incarcerated or detained in any facility, I have brought three or more civil actions or appeals in a court of the United States that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am in imminent danger of serious physical injury.

2. I understand that even if I am allowed to proceed in forma pauperis, I am responsible for paying the entire filing fee and any cost assessed by the Court, which, after payment of the partial filing fee, shall be deducted from my inmate account by my custodian in installment payments as prescribed by law.

3. I understand that if I am released or transferred, it is my responsibility to keep the Court informed of my whereabouts and failure to do so may result in this action being dismissed with prejudice.

4. I consent to receive orders, notices and judgments by Notice of Electronic Filing.

Signed this 14th day of August, 2025.

ZARIUS BROWN/#581363